■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HUBERT DIAZ, Appellant. [982 NYS2d 445]—

Judgment, Supreme Court, Bronx County (Judith Lieb, J.), rendered December 16, 2010, convicting defendant, after a jury trial, of attempted assault in the first degree, and sentencing him, as a second felony offender, to a term of 12 years, unanimously reversed, on the facts, the conviction vacated, and the indictment dismissed.

At trial, the complainant testified that during the early morning hours of January 13, 2008, he and two friends went to a night club called Maribella. The complainant went to the bar to chat with a friend, and when he was returning to his table, he came into physical contact with another person. The complainant testified that the club was crowded, and that he did not even realize that he made contact with the person; indeed, he bumped into a few people on his way back to the table where his companions were sitting. The person began accusing the complainant of hitting him in the face. The complainant attempted to shake the person's hand to defuse the situation. However, the person reached behind his back, revealing a machete that he swung twice at the complainant's head, striking it on the top and in the back. The complainant was immediately bathed in blood, and began to think that he was going to die. A chaotic scene ensued, in which the complainant struggled with his assailant, and the two knocked down multiple tables as they wrestled with each other. Another person then hit the complainant on the head with a bottle, and as he fell to the ground, he hit his head on a table. At some point he, or members of the nightclub's security staff, managed to take the machete away from the attacker, who left the club.

More than 40 minutes after the assailant left the club, police arrived and asked the complainant for a description of the perpetrator. He described the person as a short, Hispanic man, with black hair and a cut on his face. A few days after the incident, the complainant went to the local precinct, where he was given a binder of photographs to look through. He pointed to one of the pictures and told the officer supervising him that

the man depicted "looked like the person that assaulted [him]." On June 16, 2008, the complainant went to another nightclub. While he was there, he saw defendant, who he believed was the same person that assaulted him at Maribella. He called the police, who arrived and arrested defendant as he was leaving the club.

Defendant asserts that, to the extent the jury believed he was the person who assaulted complainant at Maribella, his conviction was against the weight of the evidence. "[W]eight of the evidence review requires a court first to determine whether an acquittal would not have been unreasonable. If so, the court must weigh conflicting testimony, review any rational inferences that may be drawn from the evidence and evaluate the strength of such conclusions. Based on the weight of the credible evidence, the court then decides whether the jury was justified in finding the defendant guilty beyond a reasonable doubt" (*People v Danielson*, 9 NY3d 342, 348 [2007]). Issues of credibility are for the jury to resolve (*People v Bleakley*, 69 NY2d 490 [1987]).

Here, there were troubling discrepancies in the evidence presented to the jury. Most significantly, the complainant testified that the club was sufficiently well-lit for him to see his assailant's face while the encounter was ongoing. However, the detective who investigated the incident and interviewed the complainant testified, after having had his recollection refreshed with the DD-5 report he prepared in connection with the investigation, that the complainant told him he "did not have a clear recollection of the suspect because it was somewhat dark" in the Maribella. While the complainant denies he told the detective that, the People do not offer, nor can we perceive of, any reason why the detective would have been untruthful not only on the witness stand, but also in a contemporaneous internal report documenting the investigation.

Further clouding the accuracy of the complainant's identification of defendant was the photograph he picked out of an array. We acknowledge that the complainant did not represent that the person in the photo he chose was his assailant, but rather that he looked like him. Nevertheless, there is a significant difference in the appearances, especially the complexions, of the people depicted in the two photographs, which calls into question the confidence the complainant had in recalling what his attacker looked like.

Although they are not as significant, the complainant demonstrated other lapses in memory which, when considered in light of those two more substantial inconsistencies, lead us, in our

role as a "thirteenth juror" performing a de novo review of the evidence (*People v Rayam*, 94 NY2d 557, 560 [2000]), to harbor significant doubts as to the complainant's ability to accurately identify his attacker. For example, he could not remember the name of the movie he saw immediately prior to going to the Maribella, nor could he recall the name of one of the two people who accompanied him to the nightclub. His recounting of the manner in which the brawl played out contained inherent inconsistencies, concerning who took the machete away from the attacker and whether that was before or after complainant was struck with a bottle in the head. In addition, the complainant testified that the investigating detective who interviewed him about the attack was the same person who supervised his viewing of the photo array. In fact, the detective was not on duty when the complainant viewed the array.

Because of these significant questions concerning the accuracy of the complainant's in-court identification, we find that the weight of the evidence did not support the jury's verdict that defendant was guilty of attempted assault, beyond a reasonable doubt. Concur—Mazzarelli, J.P., Andrias, DeGrasse, Freedman and Gische, JJ.